IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § | Case No. 4:15cr88 |
| | § § | |
| JOSE MANUEL FABIAN (4) | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

The Court held a hearing on Defendant's Motion to Suppress (Dkt. 132) on September 29, 2015. The Court has considered the record before it, the argument and evidence presented at the hearing, and the post-hearing briefing submitted by Defendant. As set forth below, the Court finds that the motion should be DENIED.

Defendant is charged in this matter with a violation of 21 U.S.C. § 846, conspiracy with intent to manufacture and distribute cocaine.

Defendant argues that he was stopped on March 17, 2015 by a Texas Department of Public Safety (DPS) trooper while he was driving his pickup truck on IH-35 in Williamson County, Texas. The trooper told Defendant that his front license plate was "obstructed" in violation of Texas law. Officers eventually searched Defendant's truck and found narcotics in an oxygen tank in the bed of the truck, and Defendant was arrested.

In his motion, Defendant argues that photographs and video taken of his truck at the time the trooper stopped him show that the license plate was not obstructed. Defendant argues that because he was not in violation of the Texas Transportation Code, the trooper lacked an objective basis for

1

the stop.

Defendant seeks suppression on three grounds, arguing that (1) there was no basis for the state trooper to stop him for an "obstructed" license plate; (2) any investigative detention resulting from this traffic stop exceeded the permissible limits of the stop and rendered it an illegal seizure; and (3) the Government has failed to comply with the requirements of warning of Constitutional rights and assurance of voluntary waiver of these rights preceding custodial interrogation.

At the September 29, 2015 hearing, Trooper Ryan Halfmann testified about the March 2015 traffic stop at issue.

### ANALYSIS

The Court first addresses Defendant's argument that the initial stop of his vehicle was unlawful. The Government responds that Trooper Halfmann's initial stop of Defendant was justified because there existed a reasonable basis that Defendant committed a traffic violation by driving a vehicle with an obstructed license plate.

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003); *see Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed.2d 660 (1979). The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 899 (1968) and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed.2d 492 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine whether a seizure is reasonable, the court considers (1) "whether the officer's actions was justified at its inception," and (2) "whether

the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *U.S. v. Brigham*, 382 F.3d 500, 506 (quoting *Terry* at 19-20, 88 S. Ct. 1868).

When considering whether the officer's actions was justified at its inception, the Supreme Court has stated that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *U.S. v. Arvivu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed.2d 740 (2002) (quoting *Terry* at 30, 88 S. Ct. 1868). The Supreme Court has specifically instructed that, when reviewing courts make reasonable suspicion determinations, they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id*. (quoting *U.S. v. Cortez*, 449 U.S. 411, 417-418, 101 S. Ct. 690, 66 L. Ed.2d 621 (1981)). The totality of the circumstances standard allows officers to draw on their own experience and specialized training to make inferences from and deductions about cumulative information available to them that might "well elude an untrained person." *Id*. (quoting *Cortez* at 418, 101 S. Ct. 690). The Court has been clear that an officer may not rely on a mere "hunch" in order to justify a stop. *Terry* at 27, 88 S. Ct. 1868. However, the Court has been equally clear in asserting that the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvivu*, 534 U.S. at 274, 122 S. Ct. 744.

The Fifth Circuit has applied the first prong of the *Terry* test to traffic stop situations. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *U.S. v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010). A reasonable

3

suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *Id.*; *see*, *e.g.*, *U.S. v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

In this case, Trooper Halfmann testified that he stopped Defendant because the license on the front of Defendant's truck was obstructed by a grill guard at an angular view. The Government offered a photograph of a grill guard on the front bumper of Defendant's vehicle. Halfmann testified that the number "6" on the right-hand side of license plate was obstructed by the bar that protrudes from the grill guard when approached from the side and that such is a violation of Section 504.945(a)(7)(A) of the Texas Transportation Code. Halfmann further testified that he stops as many vehicles as he can for such obstruction violations.

Under Section 504.945(a)(7)(A), a "person commits an offense if the person attaches to or displays on a motor vehicle a license plate that ... has a coating, covering, protective substance, or **other material** that ... distorts angular visibility or detectability." TEX. TRANSP. CODE § 504.945(a)(7)(A) (emphasis added). The statute further provides that:

Subsection (a)(7) may **not** be construed to apply to:

(1) a trailer hitch installed on a vehicle in a normal or customary manner;

(2) a transponder, as defined by Section 228.057, that is attached to a vehicle in the manner required by the issuing authority;

(3) a wheelchair lift or wheelchair carrier that is attached to a vehicle in a normal or customary manner;

(4) a trailer being towed by a vehicle; or

4

> (5) a bicycle or motorcycle rack that is attached to a vehicle in a normal or customary manner.

TEX. TRANSP. CODE § 504.945(c) (emphasis added).

In his post-hearing briefing, Defendant argues that Trooper Halfmann's interpretation of the Texas Transportation Code is incorrect, goes against the intent of the legislature and plain reading of the statute, and would allow officers to make arbitrary and unreasonable stops by positioning themselves at sharp angles or in positions such that angular visibility is distorted, even though there are many other angles from which the plate is clearly visible. *See* Dkt. 169.

Although Defendant is correct in his assertion that there can be no probable cause if the alleged traffic infraction was not an actual violation of any statute, *see United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999), Defendant has not provided the Court with any governing authority to show that the positioning of the grill guard on the front of his truck was not a violation of the statute. Specifically, there is no authority before the Court to show that the grill guard cannot be considered "other material that ... distorts angular visibility or detectability" as outlined by the Texas statute. The Court is governed by the plain language of the statute relied upon by the trooper, and the Court notes that a grill guard does not fall within any of the clearly enumerated exceptions set forth in the statute. *See* TEX. TRANSP. CODE § 504.945(c).

Trooper Halfmann's testimony sufficiently established why he could not read all the numbers on Defendant's license plate such that it was a proper stop. *Cf. United States v. Lozoya Izaguirre*, 2012 WL 6020042, at *3 (S.D. Tex. 2012) (granting motion to suppress where officer's testimony was "devoid of any indication that anything, including general road grime, 'significantly impaired'

5

the readability of the license plate or otherwise distorted, altered, or obscured the plate's information" and where the officer accurately recited plate number on dispatch recording while he was driving next to vehicle). That the full license plate number could be easily read once the vehicle was stopped does not alter the Court's analysis as to the justification for the stop. *Walden v. State*, 2015 WL 3799225, at *1 (Tex. App. – Eastland 2015, pet. ref'd) (when an officer could not read the first digit on a license plate because it was bent, he had probable cause to stop and detain driver for a traffic violation, even if he could fully read the license plate when the vehicle was stopped). The photograph offered into evidence by the Government at the hearing shows how the grill guard blocked one digit on the plate when Defendant's truck was on the highway.

The Court notes that Trooper Halfmann conceded during the hearing that he believed the truck was a narcotics carrier at the time he stopped it. He further testified that he was given information prior to his traffic patrol regarding a Hispanic male driving a Chevrolet truck with an oxygen tank in the back, but because Defendant was not driving a Chevrolet he developed his own probable cause to stop the truck. That Halfmann may have had ulterior motives in stopping Defendant has no bearing on the Court's analysis here. "It is well established that so long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment." *United States v. Harris*, 566 F.3d 422, 434 (5th Cir. 2009) (internal alterations and quotation marks omitted).

Based on the record before it, the Court finds that the initial stop of the vehicle was proper and did not violate the Fourth Amendment. *United States v. Sicking*, 2012 WL 3886348, at *5 (E.D.

Tex. 2012), report and recommendation adopted by U.S. District Judge Marcia A. Crone, 2012 WL 3886329 (E.D. Tex. 2012) (initial stop of vehicle did not violate the Fourth Amendment where paper license plate was blowing in the wind and was not visible to the officers because it is a violation of Texas Transportation Code § 504.945 for license plate to obscure the readability of the letters or numbers of the license plate number "at any time").

The Court next addresses Defendant's argument that any investigative detention resulting from this traffic stop exceeded the permissible limits of the stop and rendered it an illegal seizure. At the hearing, the Government offered the video recording of the traffic stop taken from Halfmann's dash-camera. The traffic stop lasted approximately an hour and a half, and the Government played the initial portion of the traffic stop video at the hearing before the Court.

Once Halfmann stopped Defendant, Defendant was not able to provide a driver's license but only a Texas identification card. Halfmann testified that Detective Matthew Hargrove then arrived at the scene while Defendant was providing his itinerary and Halfmann was verifying Defendant's identity. Officers learned that Defendant's license was suspended, and Defendant stated that he was driving his brother's truck. Approximately eight minutes into the stop, officers asked Defendant if anything illegal was in the truck and Defendant gave consent to search.

The second prong of the *Terry* test requires that the court consider whether the police officer's actions after a legitimate traffic stop were "reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *Brigham*, 382 F.3d at 507. Such a limitation exists because the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported

7

by articulable facts, emerges." *Id*. (quoting *U.S. v. Dortch*, 199 F.3d 193 (5th Cir. 1999)). In the course of effectuating a traffic stop, a police officer may examine the driver's license and registration and run a computer check to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Id*. at 507-508. An officer may also ask about the purpose and itinerary of a driver's trip during the traffic stop. *Id*. at 508. In fact, the Fifth Circuit, specifically considering the scope of such questioning, has rejected "any notion that a police officer's questioning, *even on a subject unrelated to the purpose of a routine traffic stop*, is itself a Fourth Amendment violation." *U.S. v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993) (emphasis original). Detention, not questioning, is the evil at which *Terry*'s second prong is aimed. *Brigham*, 382 F.3d at 508.

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, then there can be no more reasonable suspicion, and, as a general matter, any continued questioning thereafter unconstitutionally prolongs detention. *Id*. at 510. A recognized exception to this rule is when additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled. *Id*. at 507; *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). If this occurs, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *Id*.

The Court finds that the detention of Defendant prior to his consent lasted no longer than was necessary to effectuate the purpose of the stop and that further reasonable suspicion emerged as the stop continued. Immediately upon stopping Defendant, Defendant was unable to present a valid driver's license, giving Trooper Halfmann grounds for reasonable suspicion and affording him the opportunity to verify Defendant's identity and the ownership of the vehicle. Further, during this

time, it was confirmed that Defendant's driver's license was suspended. As Halfmann testified, not having a valid driver's license is in and of itself an arrestable offense. Halfmann further testified that Defendant's story about his travel plans were inconsistent during the interview and that the fact that he was coming from the Mexican border and going to Waco, Texas, continued to cause suspicion as to his activity. Halfmann also testified that Defendant appeared nervous and was wearing a shirt with an insignia which is associated with certain drug cartels.

The Court finds that, considering the totality of the circumstances, the period of pre-consent detention – approximately eight minutes – was a reasonable amount of time to detain Defendant. The Court further notes, as argued by the Government, that Defendant's suspended license alone would be grounds for arrest.

Defendant also consented to the search. The Supreme Court has held that Fourth Amendment does not bar an officer from continuing to question a suspect even after all reasonable suspicion has been dispelled so long as the suspect provides consent. The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "voluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 136 L. Ed.2d 347 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed.2d 854 (1973)). At its heart, the issue of voluntariness is governed by whether a reasonable person would understand that he or she is free to refuse.

Here, Defendant's consent to search the truck was freely given and not the product of an unlawfully extended detention. *Cf. U.S. v. Santiago*, 310 F.3d 336, 343 (5th Cir. 2002) ("the consent to search was not an independent act of free will, but rather a product of the unlawfully extended

9

detention."). Having reviewed the video of the stop, the Court finds that officers did not coerce or threaten Defendant to consent and that the consent was voluntarily made. On the video recording of the traffic stop, Defendant can been seen motioning toward the truck when permitting the officers to search. The time of detention was not prolonged, and the consent was voluntarily given.

Finally, the Court addresses Defendant's argument that the Government failed to comply with the requirements of warning of Constitutional rights and assurance of voluntary waiver of these rights preceding custodial interrogation. According to Halfmann, the oxygen tanks in the bed of the truck showed imperfections, indicating that they had been tampered with and re-welded. Officers took the vehicle and tanks off the roadside for further inspection. Halfmann testified that once the tanks were cut open, officers found approximately 30 pounds of cocaine inside and Defendant was arrested.

No evidence was presented at the hearing regarding any custodial interrogation of Defendant. Further, Halfmann testified that, after Defendant was arrested and officers transported him to jail, he was not aware of any statements provided by Defendant. There is no basis for suppression based on this argument.

For these reasons, the Court recommends that Defendant's Motion to Suppress (Dkt. 132) be DENIED in its entirety.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 2nd day of November, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE